# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
4/24/2023

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 3:23-mj-166
GREY APPLE IPHONE, and BLACK APPLE IPHONE )
CURRENTLY LOCATED AT 335 WEST THIRD )
STREET, DAYTON, OHIO )

**APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____Ohio_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) | Possession with intent to distribute a controlled substance |
| 18 USC § 924(c) | Possessing a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

❒ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ G. Tyler Orndorff*
*Applicant's signature*

TFO G. Tyler Orndorff, FBI
*Printed name and title*

Sworn to before me and signed in my presence via telephone.

Date: 3/24/23

*/s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

City and state: Dayton, Ohio

DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF GREY APPLE IPHONE, and BLACK APPLE IPHONE CURRENTLY LOCATED AT 335 WEST THIRD STREET, DAYTON, OHIO | Case No. 3:23-mj-166 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, **G. TYLER ORNDORFF**, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two Apple iPhones—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am currently a Task Force Officer ("TFO") with the United States Federal Bureau of Investigation ("FBI") and have been since June 2022. As such, I am empowered by law to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 21 and Title 18 U.S.C. § 878. I have been a law enforcement officer for the past ten years, beginning in 2013 when I became a police officer with the City of Dayton, Ohio. Since April 2019, I have been assigned to the Dayton Police Department's Narcotics Bureau and have been dedicated to the investigation of drug, firearm, and gang-related offenses. My primary duties as an FBI TFO consist of investigating criminal enterprises, narcotics investigations, organized crime, and violent crimes

to include unlawful possession and possession with the intent to distribute of controlled substances, as well as the associated conspiracies in violation of Title 21, United Stated Code ("U.S.C."), Sections 841, 843, and 846. I am familiar with federal firearms laws, and investigations into possession of a firearm by a convicted felon, possessing a firearm in furtherance of a drug trafficking crime and the associated violations of Title 18, United States Code, Sections 922 and 924. I have received specialized training in the means and methods by which individuals and drug trafficking organizations conduct illegal drug trafficking activities, as well as in the use of various investigative techniques used to uncover unlawful drug trafficking organizations. Based upon my experience and training, I am familiar with the ways in which drug traffickers conduct their experience and training, including, but not limited to, their use of code words and numbers to conduct their transactions, their use of multiple telephones to conduct their illegal activities, their methods for concealing narcotics and narcotics proceeds, and their use of firearms, violence, and threats of violence to protect their criminal organization.

3.  I am also familiar with, and have personally participated in, multiple methods of investigating criminal enterprises, including but not limited to, electronic surveillance, visual surveillance, the questioning of witnesses, the use of confidential informants, undercover operations, and the use of pen registers, including pen registers in the form of digital analyzers. I have been involved in firearm-related arrests, executed search warrants that resulted in the seizure of drugs and firearms, participated in undercover drug purchases, and supervised the activities of confidential informants who have provided information and assistance resulting in drug purchases. I have previously obtained search warrants to examine electronic devices such as cellular phones for evidence of drug trafficking and other crimes, and I am familiar with techniques used to search

cellular phones for electronic evidence as well as the role of cellular phones in drug trafficking and other crimes.

4.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.  The property to be searched are two Apple iPhone cellular telephones, (1) grey in color, and (2) black in color, herein after referred to as "Devices." The Devices are currently located at the Dayton Police Department located at 335 West Third Street, Dayton, Ohio.

6.  The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

**A. Overview of the Investigation**

7.  In the winter of 2023, I began investigating Tracy DAVIS Jr. ("DAVIS") for trafficking of methamphetamine and fentanyl throughout the greater Dayton, Ohio area. In April of 2023, I obtained a search warrant for DAVIS's residence, which is a mixed-use building located at 1725 E. Third Street, Apartment A, in Dayton, Ohio. I authored the supporting affidavit for this search warrant, which was approved on April 12, 2023, by Dayton Municipal Courts Judge Mia Wortham-Spells. The supporting affidavit for the search warrant specifically identified DAVIS as the primary suspect in my investigation. Among other things, the search warrant explained that a reliable and trustworthy confidential source had identified DAVIS as a local drug trafficker and had provided DAVIS's "Facebook" profiles to which he used the application "Facebook

Messenger" as a means to communicate and traffic narcotics. This confidential source subsequently communicated by cell phone with DAVIS to complete five (5) controlled purchases of fentanyl and methamphetamine from DAVIS, the most recent of which occurred on or about April 10, 2023. As a result of my investigation, I identified the residence located at 1725 E. Third Street, Apartment A, in Dayton, Ohio as DAVIS's residence, where he traveled to and from immediately following drug transactions with the confidential source.

**B. Evidence seized from DAVIS's residence suggests that DAVIS is currently trafficking methamphetamine and fentanyl.**

8. On April 13, 2023, at approximately 8:05 am, members of the Dayton Police Department ("DPD") Narcotics Bureau executed the search warrant at DAVIS's residence located at 1725 E. Third Street, Apartment A, in Dayton, Ohio. While on surviellance prior to the service of the search warrant, law enforcement observed DAVIS exit the residence and begin to walk towards a vehicle. Detectives attempted to make contact with DAVIS prior to his entry into the vehicle, but when detectives activated overhead lights, DAVIS fled on foot.

9. DAVIS fled on foot for a brief time before being apprehended by detectives. A search of the flight path that DAVIS had taken resulted in the recovery of a Grey Apple iPhone, a set of keys, and a Dessert Tan, FN 9mm handgun with serial number GKS0109687.

10. Detectives regrouped and prepared to serve the search warrant at 1725 E. Third Street, Apartment A. Members of the Narcotics Bureau utilized the keys recovered from the flight path of DAVIS to unlock the door and make entry. Upon entry into the residence, officers found that the apartment to be empty of occupants.

11. Once law enforcement authorities secured the residence, detectives began to search for evidence related to our drug trafficking investigation. In the kitchen of the apartment, detectives

discovered the following items of evidentiary value: a grey nylon briefcase on the kitchen counter, contaning multiple plastic bags of suspected narcotics and drug paraphenalia, including a digital scale and spoon. Also located inside of this briefcase with the suspected narcotics was an SCCY 9mm handgun, serial number 860860.

12. As detectives continued to search the kitchen, they located surgical masks, rubber gloves, and spoons with apparent drug residue. Detectives located $10,660 in U.S. currency in a kitchen drawer.

13. Detectives continued to search the residence and found men's clothing, money, and jewelry in the main bedroom of the apartment. Inside a pair of jeans laying on the bed in the main bedroom, a wallet was located. This wallet contained an Ohio State identification card belonging to DAVIS, along with several other cards in the name of DAVIS. Chase Bank paperwork addressed to DAVIS was also located in this bedroom.

14. Based on my training and experience, I belive that the close proximity of the surgical masks, rubber gloves, and spoons to the drugs, drug paraphernalia, and firearm, indicate that DAVIS was using those items for illegal drug manufacturing and trafficking.

15. Based upon my law enforcement training and experience investigating narcotics crimes, I believe that DAVIS was in fact engaging in drug trafficking activities and operating an active drug house at the time of this search warrant. My opinion is based upon the following factors: (a) the presence of several large quantities of narcotics in DAVIS's house; (b) the fact that such an amount of methamphetamine, cocaine and fentanyl, based on my training and experience, would equate to what is generally viewed as a "distribution amount" of drugs; (c) the presence of drug paraphernalia and drug manufacturing equipment; (d) the presence of firearms; and (e) the presence of approximately $11,590 in U.S. currency which was found throughout the apartment.

**C. I believe that the Devices contain evidence relevant to my investigation.**

16. During the intial arrest of DAVIS, a cellular device believed to belong to him was found on the ground during his flight path, along with keys that were later determined to open 1725 E. Third Street, Apartment A, in Dayton, Ohio. During the search of the apartment, a second cell phone was found on the bed in the main bedroom.

17. I know, based on my training and experience, that cell phones are extremely valuable tools for drug traffickers. Among other things, cell phones enable traffickers to communicate with customers and sources of supply, easily keep records of transactions, and to take photographs of drugs, firearms, drug proceeds, and other tools of the drug trafficking trade, which they may use to confirm the availability of drugs for sale to their customers, or (in the case of firearms) to deter others from robbing them.

18. I know, based on my training and experience, that it is common for drug traffickers to use more than one cell phone to evade detection by law enforcement. For instance, drug traffickers may use cell phones to communicate with customers, another cell phone to communicate with sources of supply, and a third cell phone for personal use. It is also common for traffickers to possess multiple phones because they often transition from sales on a particular phone to another phone as a law enforcement countermeasure.

19. Based on my training and experience, I know that individuals typically carry cell phones on their person or keep their cell phones nearby. I also know, based on the confidential source's cell phone communications with DAVIS, that DAVIS uses a cell phone in furtherance of his drug trafficking. I believe that information including location data, as well as communications, on any cell phone used by DAVIS could help agents determine the location and transportation methods of DAVIS's drug trafficking organization ("DTO"); identify co-conspirators and sources

of supply; and reveal other locations where the DTO may store drug traffficking items, including controlled substances and firearms. Even a cell phone not explicitly used for drug trafficking business may contain infromation relevant to my investigation, including DAVIS's location and absence of legitimate employment that could explain the large amount of cash found in his residence.

20. Based on the above facts, I assert that there is probable cause to believe that evidence of violations of 21 U.S.C. § 841(a)(1), "Possession with intent to distribute a controlled substance" and 18 U.S.C. § 924(c), "Possession of a firearm in furtherance of a drug trafficking crime" may be found on the Devices. Affiant requests the search warrant to search the Devices listed in Attachment A for evidence of those violations as set forth in Attachment B.

21. The Devices are currently stored at the Dayton Police Department, 335 West Third Street, Dayton, Ohio (within the Southern District of Ohio). In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the Dayton Police Department.

## TECHNICAL TERMS

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

7

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23. Based on my training, experience, and observation of the Devices, I know that the Devices have the capability to serve as a cellular telephone and to store electronic data in various forms. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on a device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine the Devices already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*G. Tyler Orndoff*

G. TYLER ORNDORFF
TASK FORCE OFFICER
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on April 24, 2023:

Peter B. Silvain, Jr.
United States Magistrate Judge

11

## ATTACHMENT A

The items to be searched are two Apple iPhones (hereinafter collectively the "Devices") presently located at the Dayton Police Department, 335 West Third Street, Dayton, Ohio. The devices are depicted and described below:

A. Apple iPhone, grey in color.




B. Apple iPhone, black in color.




This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. § 841(a)(1), "Possession with intent to distribute a controlled substance"; 21 U.S.C. § 843, "Use of communication facility to commit a felony", and 18 U.S.C. § 924(c), "Possession of a firearm in furtherance of a drug trafficking crime" and involving on Tracy Davis, Jr. including:

   a. any communications, including but not limited to: phone calls, text messages, application messages, relating to the use, possession, receipt, transportation, and/or purchase of controlled substances;

   b. any internet search history and browser files related to sources and possession of controlled substances;

   c. lists of drug customers and related identifying information;

   d. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   e. any information related to sources of drugs or others involved in the possession or distribution of drugs (including names, addresses, phone numbers, or any other identifying information);

   f. any information regarding the acquisition, use, or possession of firearms;

   g. any information, including GPS location information, recording DAVIS's schedule or travel in connection to trafficking in controlled substances;

      h. any photographs and videos, including metadata, any other records relating to source or possession of firearms or controlled substances;

      i. any information related to the acquisition of items used to assist in trafficking in controlled substances such as rental cars or cellular phones; and

      j. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.